EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Antonio Torres González<br><br>Peticionario<br><br>v.<br><br>Arlean Zaragoza Meléndez<br><br>Recurrida | Certiorari<br><br>2023 TSPR 46<br><br>211 DPR ___ |

Número del Caso: CC-2023-0056

Fecha: 12 de abril de 2023

Tribunal de Apelaciones:

Panel VII

Abogadas de la parte peticionaria:

Lcda. Marta Figueroa Torres
Lcda. Jessica A. Figuera Arce

Abogado de la parte recurrida:

Lcda. Sylvia Juarbe

Materia: Derecho de Familia y Procedimiento Civil – Si procede un descubrimiento de prueba con carácter liquidatorio y patrimonial en un caso de divorcio por ruptura irreparable de un matrimonio que no tiene hijos en común y otorgó capitulaciones con régimen económico de separación de bienes.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| José Antonio Torres González<br><br>Peticionario<br><br>v.<br><br>Arlean Zaragoza Meléndez<br><br>Recurrida | CC-2023-56 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 12 de abril de 2023.

> **"[L]as cortes deben ser instrumento de ayuda y no arena de combate".[1]**

En el ministerio de impartir justicia en las cortes, los jueces debemos tener siempre presente que los casos, las controversias y los conflictos se atiendan con independencia, diligencia, sensibilidad e imparcialidad.[2] Sobre todo, en las salas de relaciones de familia de nuestros tribunales es imperativo que la adjudicación de los asuntos se realice con la mayor diligencia y, por supuesto, garantizando los derechos de todas las partes involucradas. Es en estas salas en las que se entretejen, transcurren y

---

[1] Véase Conferencia Judicial de Puerto Rico, Comité sobre Relaciones de Familia y Delincuencia Juvenil, 11 al 13 de diciembre de 1958, pág. 57.

[2] Véase *Misión del Poder Judicial de Puerto Rico*, https://poderjudicial.pr/mision-y-vision-de-la-rama-judicial/ (última visita, 20 de marzo de 2023).

dilucidan los aspectos más íntimos del pilar de toda sociedad: la familia.

Como una controversia novel enmarcada en el Código Civil de Puerto Rico de 2020 (Código Civil de 2020), Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*, debemos determinar si procede un descubrimiento de prueba con carácter liquidatorio y patrimonial en un caso de divorcio por ruptura irreparable[3] de un matrimonio que otorgó capitulaciones -con régimen económico de separación de bienes- y no tiene hijos en común.

Por considerar que el descubrimiento de prueba antes mencionado es incompatible con la finalidad del proceso de divorcio por ruptura irreparable e incide con el postulado que busca garantizar la solución justa, rápida y económica de todo procedimiento, adelantamos que contestamos en la negativa la interrogante antes esbozada.[4]

Pasemos a delinear los hechos que dieron lugar a la controversia ante nuestra consideración.

I

El 18 de marzo de 2022, el Sr. José Antonio Torres González (señor Torres González o peticionario) presentó ante el foro de instancia una *Petición de divorcio por ruptura irreparable* para disolver su vínculo matrimonial con

---

[3]   Conviene señalar que a través de esta Opinión utilizaremos de igual manera el término completo "divorcio por ruptura irreparable de los nexos de convivencia matrimonial" como la versión abreviada "divorcio por ruptura irreparable".

[4]   Regla 1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 1.

la señora Zaragoza Meléndez, con quien contrajo nupcias -por segunda ocasión- el 14 de febrero de 2001 en San Juan, Puerto Rico.[5] Allí expresó que, para evitar mayor deterioro y sufrimiento familiar, acudía al tribunal "para atender el asunto de la disolución del [matrimonio] de **manera prioritaria y urgente**, por entender que ello asegurará la tranquilidad individual… y de la familia entera". (Énfasis nuestro).[6] Añadió que no le interesaba continuar una relación que estaba rota hacía mucho tiempo, por lo que afirmó que "los nexos de convivencia matrimonial se han roto irreparablemente y que no hay posibilidad de reconciliación".[7]

Según alegado, las partes otorgaron capitulaciones matrimoniales previo a su enlace, acordaron el régimen de separación de bienes, y no procrearon hijos en común. Según consta en el expediente del caso, las partes se habían casado previamente en el 1998 y se divorciaron en el 2000 (como bien indicado anteriormente, volvieron a casarse en el 2001).[8]

Una vez se diligenció el emplazamiento, el 27 de abril de 2022, el foro de instancia señaló una vista en su fondo por videoconferencia para el 24 de mayo de 2022. Más

---

[5]   *Certificación de matrimonio*, Apéndice del *certiorari*, pág. 18.

[6]   *Petición de divorcio por ruptura irreparable*, Apéndice del *certiorari*, págs. 16-17.

[7]   Íd., pág. 17.

[8]   *Contestación a la demanda, defensas afirmativas y reconvención*, Apéndice del *certiorari*, pág. 23.

adelante, el 13 de mayo de 2022, la señora Zaragoza Meléndez presentó su *Contestación a la demanda, defensas afirmativas y reconvención*. Allí, admitió que se otorgaron capitulaciones matrimoniales, pero negó que su matrimonio se administrara bajo el régimen económico de separación de bienes. Además, manifestó que las partes adquirieron bienes y deudas en común, y que los bienes están mayormente bajo el control del peticionario. Así pues, en su reconvención, pidió que se establecieran medidas cautelares para evitar la dilapidación del caudal. Específicamente, solicitó la prohibición de enajenar y la coadministración de bienes hasta la liquidación de la alegada comunidad de bienes constituida. De igual manera, la recurrida expresó que "[l]os lazos de convivencia matrimonial han sido rotos irreparablemente para siempre y no existen posibilidades de reconciliación".**9**

A sólo una semana de la fecha señalada para la vista, el 16 de mayo de 2022 la señora Zaragoza Meléndez presentó una *Urgentísima moción solicitando suspensión*. En particular, se informó que **-debido a un conflicto de calendario-** su representante legal no podría presentarse a la vista en su fondo pautada para el 24 de mayo de 2022. Ante esto, el señor Torres González presentó una *Moción en respuesta a [la] "Urgentísima moción solicitando suspensión"*, en la que manifestó su preocupación de que el proceso de divorcio se

---

**9** Íd.

retrasara injustificadamente y exhortó al foro de instancia a no permitir que el proceso fuera "secuestrado y dilatado por retrasos en el calendario y solicitudes de vistas adicionales [improcedentes]".[10]  Asimismo, expuso que la solicitud de remedios provisionales de la recurrida era muy general y no ponía al tribunal de instancia en posición de evaluar su procedencia.

Así pues, el 23 de mayo de 2022, el foro de instancia dejó sin efecto la vista del 24 de mayo de 2022. Posteriormente, el 22 de junio de 2022, **el tribunal de instancia reseñaló la vista en su fondo para el 28 de junio de 2022.**

Dos semanas previo a la celebración de la vista pautada, el 13 de junio de 2022, la señora Zaragoza Meléndez presentó una *Moción informativa* en la que notificó haber enviado al peticionario un Primer Pliego de Interrogatorio, el cual constaba de cien (100) preguntas.

El 27 de junio de 2022 -un día antes de la vista señalada-, la recurrida presentó una *Urgentísima moción solicitando suspensión* para informar **-por segunda ocasión- otro conflicto de calendario.** Allí solicitó una nueva fecha para la vista en su fondo y adelantó que el 16 de agosto de 2022 era fecha hábil para ambas partes. Además, indicó que -como parte de la petición de medidas cautelares- era imprescindible que se le proveyera lo solicitado en el

---

[10] *Moción en respuesta a [la] "Urgentísima moción solicitando suspensión"*, Apéndice del *certiorari*, pág. 32.

descubrimiento de prueba en vías de proteger el caudal en común. También indicó que las partes estaban en conversaciones para auscultar si podían "resolver todos los asuntos pendientes en un divorcio por consentimiento mutuo".[11] Así las cosas, el 29 de junio de 2022, **el tribunal de instancia reseñaló la vista en su fondo para el 16 de agosto de 2022.**

Más adelante, el 26 de julio de 2022, el señor Torres González envió su *Contestación y/u objeciones a "Primer Pliego de Interrogatorio"*, en la que contestó veintisiete (27) incisos del interrogatorio y objetó el resto. En lo pertinente, hizo constar lo siguiente para fundamentar sus objeciones:

> [S]e objeta por constituir un "fishing expedition" no autorizado por nuestro andamiaje jurídico. Las partes otorgaron capitulaciones matrimoniales en virtud de las cuales manifestaron expresamente su repudio a los principios de la sociedad de gananciales y las reglas que rigen esta entidad jurídica, optando por acoger también de manera expresa, el régimen de separación de bienes. En la medida en que este es un caso de divorcio por ruptura irreparable, causal sobre la cual no hay controversia entre las partes, en esta etapa no hay necesidad de descubrimiento de prueba. Ello sí pudiera proceder en un caso separado y distinto -*post divorcio*- para atender la liquidación de bienes comunes adquiridos, si alguno, durante el matrimonio. La Sra. Zaragoza tiene bienes propios y nada ha planteado que denote una emergencia que amerite el presente descubrimiento de prueba sobre su alegación en cuanto a la administración de bienes comunes y solo requiere de la vista ya señalada para el 16 de agosto de 2022 para que el Tribunal evalúe la razón de ser de la

---

[11] *Urgentísima moción solicitando suspensión*, Apéndice del *certiorari*, pág. 44.

petición de remedios y si procede conceder alguno. (Véase <u>Félix Aníbal Díaz Negrón v. Yolanda Martínez Viruet</u>, KLCE202101005, 2021WL5711106 (2021)). (Énfasis y negrillas omitidos).[12]

Llegado el día señalado para la vista en su fondo (16 de agosto de 2022), **la misma <u>no</u> se celebró debido a que la señora Zaragoza Meléndez insistió en que no se había cumplido con el descubrimiento de prueba, siendo así la tercera vista cancelada. Así pues, el 16 de agosto de 2022, el foro de instancia pautó una vista de medidas cautelares para el 22 de septiembre de 2022.** Además, ordenó que las partes compartieran la prueba documental en el término de quince (15) días antes de la vista señalada "para el día de la vista atender asuntos medulares".[13]

A menos de una semana para la vista de medidas cautelares, el 16 de septiembre de 2022, la recurrida presentó una *Solicitud de orden bajo la Regla 34.2 de las de Procedimiento Civil*. En síntesis, solicitó que se ordenara al peticionario a cumplir con el descubrimiento de prueba solicitado so pena de severas sanciones.

En respuesta, el 20 de septiembre de 2022, el señor Torres González presentó una *Moción en oposición a "Solicitud de orden bajo la Regla 34.2 de las de Procedimiento Civil"*. En ésta manifestó que el interrogatorio cursado era opresivo y una expedición de

---

[12] *Contestación y/u objeciones a "Primer Pliego de Interrogatorio"*, Apéndice del *certiorari*, págs. 50-51.

[13] *Minuta*, Apéndice del *certiorari*, pág. 59.

pesca dirigido a un litigio de liquidación de una comunidad de bienes y no a un pleito de divorcio. Añadió que no se debía permitir que el caso de divorcio se desvirtuara "con meramente una solicitud genérica de medidas cautelares" presentada por la señora Zaragoza Meléndez.[14] Al respecto, expresó que la solicitud de la recurrida no denotaba una urgencia que ameritara el descubrimiento de prueba que ésta pretendía imponer sobre su alegación con relación a la administración de los bienes en común.

Debido al paso del huracán Fiona, el tribunal de instancia dejó sin efecto la vista de medidas cautelares señalada para el 22 de septiembre de 2022 y la recalendarizó para el 14 de octubre de 2022. Más adelante, el 27 de septiembre de 2022, la señora Zaragoza Meléndez presentó una *Moción solicitando turno posterior*, en la que notificó **-por tercera ocasión- un conflicto de calendario** y solicitó un turno posterior en la fecha pautada. No obstante, **el foro de instancia informó no tener turno posterior en el calendario judicial y dejó sin efecto la vista de medidas cautelares.**

Así las cosas, el 6 de octubre de 2022, el tribunal de instancia emitió una *Orden* en la que dispuso lo siguiente:

> Teniendo el beneficio de la comparecencia de ambas partes, se ordena que en el término de 5 días que se notifiquen todas las contestaciones objetadas a la parte demandante. Reiteramos que el descubrimiento de prueba debe ser amplio y no se ha presentado justa causa para no

---

[14] *Moción en oposición a "Solicitud de orden bajo la Regla 34.2 de las de Procedimiento Civil"*, Apéndice del *certiorari*, pág. 157.

presentar la información requerida en el interrogatorio.[15]

Inconforme con el curso de acción del foro de instancia, el señor Torres González presentó ante el Tribunal de Apelaciones una *Solicitud de certiorari* junto con una moción en auxilio de jurisdicción el 24 de octubre de 2022. En resumen, adujo que el tribunal de instancia erró al ordenarle contestar unos interrogatorios -que fueron bien objetados- de carácter patrimonial y liquidatorio en una acción sencilla y urgente de divorcio por ruptura irreparable con capitulaciones matrimoniales y sin hijos. Por consiguiente, solicitó que el foro apelativo intermedio expidiera el auto de *certiorari*, denegara el descubrimiento de prueba cursado por la recurrida y ordenara la celebración de la vista en su fondo sin mayor dilación.

Al día siguiente, el Tribunal de Apelaciones concedió a la recurrida hasta el 27 de octubre de 2022 para que mostrara causa por la cual no se debían paralizar los procedimientos y expedir el recurso para revocar la *Orden* recurrida. Luego de concedido un término adicional solicitado por la señora Zaragoza Meléndez, ésta presentó su *Alegato en oposición [a] expedición de recurso de certiorari* el 7 de noviembre de 2022.

Evaluados los planteamientos de ambas partes, el 28 de noviembre de 2022, el foro apelativo intermedio denegó

---

[15] *Orden*, Apéndice del *certiorari*, pág. 171.

-mediante *Resolución*- la expedición del auto de *certiorari*. En particular, manifestó lo siguiente:

> Evaluado el recurso a la luz de la Regla 40, no vemos que, en el manejo del caso ante el TPI, se haya incurrido en un abuso de discreción o que este haya actuado bajo prejuicio o parcialidad. Tampoco se demostró que, el foro recurrido se haya equivocado en la interpretación o aplicación de una norma procesal y que, intervenir en esta etapa, evitaría un perjuicio sustancial contra la parte peticionaria. Por consiguiente, no se nos persuadió sobre la deseabilidad de intervenir en esta etapa de los procedimientos.[16]

Así las cosas, el 7 de diciembre de 2022, el foro de instancia declaró con lugar una moción urgente de la señora Zaragoza Meléndez para que se ordenara al señor Torres González a cumplir con el descubrimiento de prueba en el término de cinco (5) días. En su *Orden*, el tribunal de instancia dispuso lo siguiente:

> Como se pide. Se ordena a la parte demandante cumplir con el descubrimiento de prueba en el término perentorio de 5 días so pena de imponer sanciones de $50.00 diarias por cada día en que no se cumpla con nuestra orden. Se ordena que en igual término presente tres fechas hábiles en coordinación con la otra parte en aras de calendarizar vista evidenciaria.[17]

Inconforme con dicha *Orden*, el 12 de diciembre de 2022, el peticionario presentó ante el tribunal de instancia una *Solicitud de reconsideración y para que se establezca calendario de descubrimiento de prueba.* En lo pertinente,

---

[16] *Resolución*, Apéndice del *certiorari*, pág. 209.

[17] Véase *Anejo 1*, Apéndice de la *Solicitud urgente de paralización de los procedimientos ante el TPI en auxilio de jurisdicción* presentada por el señor Torres González ante este Foro.

expresó que dicho foro debía esperar por el resultado final del proceso apelativo, ya que ese mismo día había presentado una *Moción solicitando reconsideración* de la *Resolución* emitida por el Tribunal de Apelaciones el 28 de noviembre de 2022. Más adelante, el 14 de diciembre de 2022, el foro apelativo intermedio declaró *No Ha Lugar* la mencionada solicitud de reconsideración.[18]

En los procesos ante el tribunal de instancia, el 10 de enero de 2023, la señora Zaragoza Meléndez presentó una *Oposición a solicitud de reconsideración y para que se establezca calendario de descubrimiento de prueba*, en la cual solicitó, entre otros asuntos, que se concedieran las medidas cautelares de prohibición de enajenar los bienes del caudal común y la coadministración del mismo.[19] Al día siguiente, el 11 de enero de 2023, el foro de instancia resolvió la solicitud de reconsideración del señor Torres González que había quedado en suspenso y emitió una *Orden*.[20] Específicamente, el tribunal de instancia determinó lo siguiente:

> Sin Lugar. No le asiste [la] razón[,] por lo que reiteramos lo ordenado. En la medida en que no se cumpla con el descubrimiento de lo requerido, se continuarán acumulando las sanciones impuestas de $50.00 diarios según establecido. Para evitar mayores sanciones,

---

[18] El archivo en autos de copia de la *Resolución* fue el 19 de diciembre de 2022.

[19] Véase *Anejo 3*, Apéndice de la *Solicitud urgente de paralización de los procedimientos ante el TPI en auxilio de jurisdicción* presentada por el señor Torres González ante este Foro.

[20] El archivo en autos de copia de la *Orden* fue el 12 de enero de 2023.

deberá cumplir inmediatamente con el descubrimiento de lo requerido.[21]

Entretanto, insatisfecho con la decisión del Tribunal de Apelaciones sobre su solicitud de reconsideración, el peticionario presentó una *Solicitud de certiorari* ante este Foro el 18 de enero de 2023. En particular, esbozó estos dos (2) señalamientos de error:

> (1) Erró el TA al confirmar la Orden del TPI que permitió un descubrimiento de prueba que requiere contestar interrogatorios de carácter liquidatorio en una acción sencilla y urgente de divorcio por ruptura irreparable entre cónyuges con capitulaciones matrimoniales de separación de bienes y sin hijos en común, contrario a lo resuelto por un panel hermano del Tribunal Apelativo en Félix Aníbal Díaz Negrón v. Yolanda Martínez Viruet, KLCE202101005.
>
> (2) Erró el TA al confirmar el dictamen del TPI que concedió la solicitud de orden de la Sra. Zaragoza y no la denegó de plano a pesar de que ésta no cumplió con los esfuerzos de buena fe y certificación requerida por la Regla 34 de Procedimiento Civil en cuanto a controversias con el descubrimiento de prueba.

Junto a su recurso de *certiorari*, el señor Torres González presentó una *Solicitud urgente de paralización de los procedimientos ante el TPI en auxilio de jurisdicción*, la cual declaramos *Ha Lugar* mediante una *Resolución* emitida el 26 de enero de 2023. A su vez, paralizamos los procedimientos relacionados a este asunto y concedimos a la señora Zaragoza Meléndez un término de diez (10) días para que mostrara causa por la cual no debíamos expedir el

---

[21] Véase *Anejo 2*, Apéndice de la *Solicitud urgente de paralización de los procedimientos ante el TPI en auxilio de jurisdicción* presentada por el señor Torres González ante este Foro.

recurso solicitado y revocar la *Resolución* emitida por el Tribunal de Apelaciones.

Así pues, el 6 de febrero de 2023, la recurrida compareció ante este Tribunal por medio de un *Alegato en oposición a expedición de recurso de certiorari*. En síntesis, señaló que no hubo abuso de discreción, prejuicio ni parcialidad en la decisión del tribunal de instancia plasmada en la *Orden* del 6 de octubre de 2022, por lo que el foro apelativo intermedio actuó correctamente al emitir su *Resolución* "confirmatoria" el 28 de noviembre de 2022. Además, planteó que no se configura ninguno de los requisitos esbozados en la Regla 30 de nuestro Reglamento, 4 LPRA Ap. XXI-B, R. 30, para la expedición de un auto de *certiorari*.

Contando con la comparecencia de ambas partes, y con el propósito de pautar el derecho aplicable, atendemos el recurso de epígrafe sin trámite ulterior por la importancia que entraña esta controversia. Así, en virtud de la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, expedimos el recurso de *certiorari* solicitado y lo resolvemos en los méritos. En consecuencia, adelantamos que revocamos la *Resolución* emitida por el Tribunal de Apelaciones el 28 de noviembre de 2022, así como la *Orden* dictada por el Tribunal de Primera Instancia el 6 de octubre de 2022. De ese modo, devolvemos el caso al foro de instancia y ordenamos la celebración **inmediata** de una vista para que se determine -con la prueba descubierta y

disponible hasta el momento- si procede alguna de las medidas provisionales solicitadas por la Sra. Arlean Zaragoza Meléndez (señora Zaragoza Meléndez o recurrida) y celebre en esa misma fecha la vista de divorcio correspondiente. Procedemos, pues, a exponer el marco jurídico aplicable para así disponer del asunto ante nos.

**II**

A. El matrimonio y su disolución por medio del divorcio por ruptura irreparable en el Código Civil de Puerto Rico de 2020

En nuestro ordenamiento jurídico, el Libro Segundo del Código Civil de 2020 regula todo lo concerniente a las instituciones familiares. Allí se dispone lo relativo al matrimonio y a la disolución del mismo por razón de divorcio. Veamos en detalle.

1. El matrimonio

Nuestro Código Civil establece que el matrimonio es una institución civil que procede de un contrato civil por medio del cual dos (2) personas naturales se obligan mutuamente a ser cónyuges y a cumplir entre ellos los deberes que impone la ley. Art. 376 del Código Civil de 2020, 31 LPRA sec. 6591. Además, el matrimonio será válido solamente cuando se celebre y solemnice conforme a lo prescrito en ley, y sólo podrá anularse o disolverse antes de la muerte de cualquiera de los cónyuges, en conformidad con los fundamentos expuestos en el mismo Código. Íd. Los artículos del 377 al 416 atienden lo relacionado a los requisitos para contraer matrimonio; las formalidades, la celebración y la

prueba del matrimonio; los derechos y las obligaciones entre cónyuges; la invalidez del matrimonio y los efectos de la declaración de nulidad. Arts. 377-416 del Código Civil de 2020, 31 LPRA secs. 6592-6685.

Como hemos expresado, el matrimonio constituye la base de la familia y, por lo tanto, funge como el eje central de nuestra sociedad. Salvá Santiago v. Torres Padró, 171 DPR 332, 344 (2007); Cosme v. Marchand, 121 DPR 225, 232 (1988). Asimismo, hemos manifestado que el matrimonio es una institución fundamental. Íd.

El matrimonio, como institución jurídica, está sujeto a unas normas que establecen ciertos requisitos y formalidades para contraerlo, los derechos y deberes que se derivan del mismo, así como las causas, procedimientos y efectos de su disolución. R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, San Juan, Ed. Programa de Educación Jurídica Continua de la U.I.P.R., 1997, Vol. I, pág. 94.

2. La disolución del matrimonio por razón de divorcio

En nuestro andamiaje jurídico, el divorcio constituye una de las tres (3) causas de disolución del matrimonio. Véase Art. 417 del Código Civil de 2020, 31 LPRA sec. 6741. Así, la disolución conlleva la ruptura definitiva del vínculo habido entre las partes y el fin del régimen económico matrimonial. Art. 420 del Código Civil de 2020, 31 LPRA sec. 6744.

Debido al carácter solemne y fundamental de la institución del matrimonio en nuestra sociedad, se justifica que el Estado imponga requisitos y salvaguardas para regir el paso que llevará a su disolución. Salvá Santiago v. Torres Padró, *supra*, pág. 344.

Asimismo, el Art. 423 del Código Civil de 2020, 31 LPRA sec. 6761, dispone que la disolución del matrimonio por razón de divorcio podrá declararse: (1) mediante sentencia judicial (entiéndase, divorcio en el tribunal) o (2) por escritura pública (ésto es, divorcio en sede notarial). Este nuevo Código Civil elimina las causales de divorcio que existían previamente y establece dos (2) procedimientos: (1) el divorcio por consentimiento de ambos cónyuges, o (2) el divorcio por ruptura irreparable de los nexos de convivencia matrimonial. Este último podrá ser por petición individual o conjunta. Véanse: Exposición de Motivos de la Ley Núm. 55-2020; Art. 425 del Código Civil de 2020, 31 LPRA sec. 6772. Es decir, la petición conjunta de divorcio podrá ser por consentimiento o por ruptura irreparable, pero la petición individual solamente será por ruptura irreparable. Además, toda petición de divorcio será suscrita bajo juramento, por ambos cónyuges si es conjunta y por la parte peticionaria si es individual. Íd.

Cuando la petición de divorcio se realiza mediante una petición individual, como en este caso, el Art. 433 del Código Civil de 2020, 31 LPRA sec. 6780, dispone -en lo pertinente- que "el tribunal decretará disuelto el vínculo

matrimonial previa notificación mediante emplazamiento y celebración de vista". Asimismo, el Art. 434 del Código Civil, 31 LPRA sec. 6781, dispone que la sentencia de divorcio por petición individual de ruptura irreparable disolverá el vínculo matrimonial sin describir la conducta específica que dio lugar a la petición.

3. El divorcio por ruptura irreparable de los nexos de convivencia matrimonial

La Ley 192-2011 enmendó los Arts. 96 y 97 del derogado Código Civil de Puerto Rico de 1930 (Código Civil de 1930), 31 LPRA ant. secs. 321 y 331, para incluir el mutuo consentimiento y la ruptura irreparable como causales de divorcio. En particular, el inciso (12) del Art. 96 del Código Civil de 1930, *supra*, disponía como causal de divorcio lo siguiente: "La consignación de una ruptura irreparable de los nexos de convivencia matrimonial presentada por uno de los cónyuges ante el Tribunal de Primera Instancia". El fin expreso de la mencionada legislación fue proteger el derecho a la intimidad y el derecho a la dignidad de las personas, ambos garantizados por la Constitución de Puerto Rico. Véase Exposición de Motivos de la Ley 192-2011.

En la actualidad, el Art. 425 del Código Civil de 2020, *supra*, provee para la presentación de una petición de divorcio -conjunta o individual- por ruptura irreparable de los nexos de convivencia matrimonial.

El profesor y ex Juez Asociado del Tribunal Supremo de Puerto Rico, Raúl Serrano Geyls, expresó que "[s]e entiende que existe la causa [de ruptura irreparable] cuando hay un profundo, irreconciliable e irremediable conflicto entre los caracteres de los cónyuges que hace imposible la continuación de una relación conyugal ordinaria". Serrano Geyls, *op. cit.*, pág. 621. Al respecto, añadió que, para los tribunales, el término "ruptura irreparable" se relaciona con el fracaso de las gestiones de reconciliación debido a que los conflictos entre los cónyuges les impiden vivir juntos. <u>Íd.</u> En su estudio sobre la legislación comparada, **el tratadista Serrano Geyls señaló que lo importante es "no obligar a uno de los cónyuges a continuar una relación que no es viable y que, si eso sucede, el tribunal debe fomentar la disolución amigable del matrimonio".** (Énfasis nuestro). <u>Íd.</u>, pág. 622.

B. <u>Las medidas provisionales en casos de divorcio en el Código Civil de Puerto Rico de 2020</u>

Ya sea que se utilice el concepto "medidas provisionales", "remedios provisionales" o "medidas cautelares", lo cierto es que nuestro Código Civil de 2020 sí integra el asunto de las medidas provisionales relacionadas a una petición de divorcio. Al respecto, el tratadista José A. Cuevas Segarra señala que "la regulación del tema en el antiguo Código por circunstancias históricas principalmente carecía de las disposiciones que pautaran el asunto. Esto deberá dar certeza a estos procedimientos y

uniformidad". J.A. Cuevas Segarra, *Las medidas cautelares y la ejecución de la sentencia*, Barcelona, Ed. Bosch, 2020, pág. 727.

En conformidad a lo dispuesto en el Código Civil de 2020 sobre este tema, el profesor Miguel R. Garay Aubán expresa lo siguiente:

> […] El proceso de divorcio crea un estado transitorio que requiere unas garantías mínimas de protección para las partes y su patrimonio, las cuales son viables mediante medidas provisionales. Una de las características de estas medidas es que son modificables cuando ocurra un cambio sustancial en las circunstancias que amerite la intervención del tribunal. El tribunal siempre retendrá la jurisdicción y, aun cuando la sentencia de divorcio se apele, podrá modificar las medidas adoptadas. Véase M.R. Garay Aubán, *Código Civil 2020 y su historial legislativo*, San Juan, Ed. SITUM, 2020, T. I, pág. 297.

En lo pertinente, el Art. 426 del Código Civil, 31 LPRA sec. 6773, dispone que:

> La presentación de la petición de divorcio produce los siguientes efectos:
>
> (a) …
> (b) …
> (c) cualquiera de los cónyuges puede solicitar la anotación de la petición o demanda en los registros correspondientes o instar las acciones procedentes para la protección de sus derechos personales o del patrimonio conyugal.[22]

---

[22] Este inciso (c) del Art. 426 del Código Civil, 31 LPRA sec. 6773, "autoriza a cualquiera de los cónyuges a realizar ciertas gestiones para proteger su patrimonio, como es la inscripción de la petición en el Registro de la Propiedad, y a solicitar protección al tribunal para su patrimonio o sus derechos personales cuando se entienda que peligran". M.R. Garay Aubán, *Código Civil 2020 y su historial legislativo*, San Juan, Ed. SITUM, 2020, T. I, pág. 286.

Así pues, instada una petición de divorcio, aplicarán los Arts. 444 al 460 del Código Civil de 2020, 31 LPRA secs. 6791-6807, relacionados con las medidas que buscan garantizar los intereses comunes de los esposos en litigio, sus atenciones personales y el cuidado de las personas y bienes de sus hijos. Cuevas Segarra, *op. cit.*, pág. 57.

En particular, el Art. 444 del Código Civil de 2020, 31 LPRA sec. 6791, expresa que una vez se presenta una petición individual de divorcio, los cónyuges pueden acordar medidas provisionales para regir sus relaciones personales y la estabilidad económica de la familia, entre otros. Sobre éstas, el tribunal puede aprobarlas, si son adecuadas, o modificarlas en cualquier etapa del proceso.[23]

Asimismo, el Art. 445 del Código Civil de 2020, 31 LPRA sec. 6792, dispone que en caso de que los cónyuges no acuerden sobre estas medidas provisionales en un plazo prudente, **el tribunal puede establecer <u>sumariamente</u> las medidas más urgentes y necesarias**. Sobre este particular, en el Memorial explicativo del Borrador del Código Civil de 2020 se detalla lo siguiente:

> El propósito de este artículo es darle la oportunidad a los cónyuges para que acuerden dentro de un plazo razonable la manera en que

---

[23] En relación con este artículo, el Memorial explicativo del Borrador del Código Civil de 2020 menciona que "[e]ste artículo no tiene precedente en nuestra legislación […]" y "[p]retende que sean los cónyuges quienes, en primera instancia, tengan la oportunidad de establecer la manera en que se van a conducir esos acuerdos. El tribunal sólo intervendrá si, a su juicio, alguna de las partes queda desprotegida. De ser así, entonces, será el juzgador quien determine el estado provisional de las relaciones y su patrimonio". Véase M.R. Garay Aubán, *Código Civil 2020 y su historial legislativo*, San Juan, Ed. SITUM, 2020, T. I, pág. 297.

desarrollarán sus relaciones y la forma en que organizarán sus asuntos económicos durante el trámite procesal del divorcio. El tiempo de duración de la negociación debe ser prudente, ya que algunos acuerdos, dada la naturaleza del asunto, tienen que tomarse de manera diligente para que no afecten a las partes ni a su patrimonio. En este supuesto, el tribunal podrá disponer, de manera sumaria, lo que estime necesario para atender tales asuntos con la premura correspondiente. El artículo también permite utilizar los métodos alternos para la estipulación de las medidas provisionales. Véase M.R. Garay Aubán, *Código Civil 2020 y su historial legislativo*, San Juan, Ed. SITUM, 2020, T. I, pág. 298.

Por su parte, el Art. 447 del Código Civil de 2020, 31 LPRA sec. 6794, regula las medidas cautelares provisionales en cuanto a los cónyuges y el patrimonio conyugal. Específicamente, la mencionada disposición plantea que el tribunal puede adoptar estas medidas relativas a las cargas familiares y a las necesidades de ambos cónyuges, en atención del interés familiar más necesitado de protección, entre otras.[24] De igual forma,

---

[24] Al respecto, en el Art. 447 del Código Civil de Puerto Rico de 2020 (Código Civil de 2020), Ley Núm. 55-2020, 31 LPRA sec. 6794, se incluyen las siguientes medidas cautelares provisionales:

"(a) determinar cuál de los cónyuges continuará residiendo en la vivienda familiar y en qué condiciones permanecerá en ella hasta que se dicte sentencia;

(b) fijar la contribución de cada cónyuge para atender las necesidades y las cargas de la familia durante el proceso, incluidos los gastos del litigio, y disponer las garantías, depósitos, retenciones u otras medidas cautelares necesarias para asegurar su efectividad;

(c) señalar los bienes gananciales o comunes que, previo inventario, se entregarán a uno u otro cónyuge para su sustento y establecer las reglas para su administración y disposición, hasta la disolución del matrimonio y la liquidación de su régimen económico; o

(d) determinar el régimen de administración y de disposición de aquellos bienes privativos que, por capitulaciones matrimoniales o por escritura pública,

durante el proceso de disolución, el tribunal también puede adoptar otras medidas cautelares provisionales, las cuales el Art. 448 del Código Civil de 2020, 31 LPRA sec. 6795, cataloga en su título como "Otras medidas cautelaras necesarias". Éstas se enfocan en medidas cautelares para atender -por ejemplo- las necesidades especiales que tuviese cualquiera de los cónyuges.[25]

Además, el Art. 449 del Código Civil, 31 LPRA sec. 6796, indica que el tribunal podrá autorizar que cualquiera de los cónyuges abandone la residencia conyugal u ordenar el desalojo de la misma. Mientras, el Art. 450 del Código Civil de 2020, 31 LPRA sec. 6797, manifiesta lo relativo a la participación de los cónyuges en igualdad de condiciones. En particular, dispone que al momento de evaluar cualquier medida provisional sobre los bienes del matrimonio, el tribunal "debe favorecer la adopción de mecanismos ágiles y

---

estén especialmente destinados a responder por las cargas del matrimonio y la familia".

[25] En particular, el Art. 448 del Código Civil de 2020, 31 LPRA sec. 6795, dispone lo siguiente:

"Durante el proceso de disolución, el tribunal también puede adoptar otras medidas cautelares provisionales:

(a) para la atención de las necesidades especiales de cualquiera de los cónyuges o de los miembros de la familia si ellos no tienen recursos suficientes o si la naturaleza de los únicos medios disponibles para el sustento no permite la distribución conjunta e igualitaria de sus réditos o ganancias;

(b) para la atención de otros miembros de la familia, que no sean los hijos menores o los mayores incapacitados, si de ordinario ambos cónyuges asumían su sustento y necesidades especiales; o

(c) cualquiera otra necesaria y adecuada para proteger la integridad física y emocional de los cónyuges y de los otros miembros del grupo familiar durante el proceso de divorcio".

razonables que, según la naturaleza de la actividad económica intervenida, permitan a ambos cónyuges participar de la gestión, de la producción y del disfrute del patrimonio común, en igualdad de condiciones, sin afectar significativamente su rendimiento".

Por otra parte, el Art. 456 del Código Civil de 2020, 31 LPRA sec. 6803, establece que el tribunal podrá modificar las medidas cautelares provisionales cuando se alteren sustancialmente las circunstancias que las originaron o cuando ya no sean adecuadas para atender el interés protegido. Mientras, el Art. 457 del Código Civil de 2020, 31 LPRA sec. 6804, expresa que las medidas provisionales acordadas por los cónyuges o adoptadas por el tribunal estarán vigentes hasta que la sentencia de divorcio advenga firme, siempre que no se disponga algo distinto.

También, el Art. 459 del Código Civil de 2020, 31 LPRA sec. 6806, expone que aquellas medidas provisionales relacionadas con la conservación de la vivienda familiar, y a la administración y disposición de los bienes comunes, pueden continuar en vigor después de la sentencia de divorcio, a solicitud de cualquiera de los excónyuges, hasta que se adjudiquen finalmente todas las controversias sobre la liquidación del régimen económico del matrimonio.[26]

---

[26] En relación con esta disposición, el Memorial explicativo del Borrador del Código Civil de 2020 expone que este artículo:

"persigue la protección del patrimonio matrimonial y del interés propietario de los cónyuges. Aunque las medidas provisionales suelen tener efecto sólo hasta que se dilucida el pleito, nada impide que aquellas medidas

Además, el Art. 460 del Código Civil de 2020, 31 LPRA sec. 6807, establece que si una vez decretada la disolución se comienza un litigio sobre la liquidación del régimen económico, y la distribución y adjudicación de los bienes comunes, "se podrá modificar el contenido y el alcance de las medidas cuya vigencia fue extendida, a petición de cualquiera de los excónyuges". Claro está, mientras la medida provisional vigente no se modifique o suspenda judicialmente, los excónyuges quedan sujetos a sus términos. Íd.[27]

C. <u>El propósito y el alcance del descubrimiento de prueba</u>

En términos generales, el propósito del descubrimiento de prueba es: (1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y

---

dirigidas a la conservación del patrimonio familiar y a la coadministración se mantengan en vigor hasta que se adjudiquen finalmente todas las controversias entre las partes[.] Su propósito es evitar que las actuaciones del cónyuge promovido impidan que en su día se pueda hacer efectiva la sentencia". Véase M.R. Garay Aubán, *Código Civil 2020 y su historial legislativo*, San Juan, Ed. SITUM, 2020, T. I, pág. 306.

[27] Sobre este artículo, en el Memorial explicativo del Borrador del Código Civil de 2020 se indica lo siguiente:

"El tribunal que tiene ante sí la petición de divorcio siempre retiene la jurisdicción sobre los asuntos derivados del divorcio y puede modificar las órdenes provisionales según entienda que convienen o no al interés protegido. De ordinario estas medidas provisionales tienen efecto hasta que se dicta la sentencia de divorcio, pero nada impide que el tribunal las mantenga en vigor hasta que se adjudiquen finalmente todas las controversias entre las partes —aunque sea en un pleito posterior, como la liquidación de la comunidad post-ganancial— ya que su propósito es evitar que las actuaciones del cónyuge promovido impidan que en su día se pueda hacer efectiva la sentencia que recaiga". Véase M.R. Garay Aubán, *Código Civil 2020 y su historial legislativo*, San Juan, Ed. SITUM, 2020, T. I, pág. 307.

(5) perpetuar la prueba. Véase R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2802, págs. 333-334. Es por ello que hemos reiterado que el alcance del descubrimiento de prueba es amplio y liberal. McNeil Healthcare v. Mun. Las Piedras II, 206 DPR 659, 672 (2021); Scotiabank v. ZAF Corp. *et al.*, 202 DPR 478, 490 (2019); Casasnovas *et al*. v. UBS Financial *et al.*, 198 DPR 1040, 1054 (2017). Ese alcance amplio y liberal claramente propende a que, mediante el buen uso del descubrimiento, se aceleren los procedimientos, se propicien las transacciones y se eviten las sorpresas indeseables durante el juicio. McNeil Healthcare v. Mun. Las Piedras II, *supra*.

En nuestro ordenamiento legal, la Regla 23 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 23, establece aquellos parámetros que regulan el descubrimiento de prueba en los casos civiles. Específicamente, el inciso (a) de la Regla 23.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 23.1(a), dispone que las partes en litigio podrán indagar "sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente […]".

Vemos que la mencionada regla impone dos (2) limitaciones fundamentales al descubrimiento de prueba: (1) se excluye toda materia privilegiada, según los privilegios que se reconocen en las Reglas de Evidencia, y (2) la materia a descubrirse tiene que ser pertinente al

asunto en controversia. Autopistas P.R. v. A.C.T., 167 DPR 361, 379 (2006). Véanse, además: McNeil Healthcare v. Mun. Las Piedras II, *supra*, págs. 673-674; Ponce Adv. Med. v. Santiago González *et al.*, 197 DPR 891, 898-899 (2017). Al respecto, este Tribunal ha expresado lo siguiente: "para que una materia pueda ser objeto de descubrimiento, basta con que exista una posibilidad razonable de relación con el asunto en controversia". Vincenti v. Saldaña, 157 DPR 37, 54 (2002). Claro está, eso de ninguna manera significa o se traduce en que el descubrimiento de prueba sea una carta en blanco para utilizarse indiscriminadamente para hostigar y perturbar a una parte. Íd. Es ahí cuando el tribunal de instancia, en el ejercicio de su sana discreción, puede limitar el alcance y los mecanismos a utilizarse, ya que su obligación es garantizar una solución justa, rápida y económica del caso, sin que ello constituya alguna ventaja para cualquiera de las partes en el pleito. Vincenti v. Saldaña, *supra*, pág. 54. Véanse, además: Cruz Flores *et al.* v. Hosp. Ryder *et al.*, 2022 TSPR 112, 210 DPR ____ (2022); Rivera y otros v. Bco. Popular, 152 DPR 140, 153-154 (2000).

Este Tribunal también ha manifestado que los foros apelativos "[n]o hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último[:] (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de

cualquier norma procesal o de derecho sustantivo". Rivera y otros v. Bco. Popular, *supra*, pág. 155. Véase, además, McNeil Healthcare v. Mun. Las Piedras II, *supra*, pág. 672. De igual manera, dicho criterio de revisión aplica a la intervención de los tribunales apelativos en cuanto a las determinaciones interlocutorias de los foros de instancia. Íd.; Meléndez v. Caribbean Int'l. News, 151 DPR 649, 664 (2000). Todo esto, claro está, se evalúa a la luz de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *infra*.

Al momento de ejercer su discreción de extender o acortar el término para efectuar el descubrimiento de prueba, el tribunal deberá hacer un balance entre dos (2) intereses importantes para el adecuado desenvolvimiento de la labor de impartir justicia a través del sistema judicial. Por una parte, el foro de instancia deberá garantizar la pronta solución de las controversias, y por otra deberá velar que las partes tengan la oportunidad de realizar un amplio descubrimiento para que en la vista en su fondo no surjan sorpresas. Machado Maldonado v. Barranco Colón, 119 DPR 563, 565-566 (1987) (citando a Lluch v. España Service Sta., 117 DPR 729, 742-743 (1986)).

D. La Regla 52.1 de Procedimiento Civil de Puerto Rico y la Regla 40 del Reglamento del Tribunal de Apelaciones

El auto de *certiorari* es el vehículo procesal que permite a un foro de mayor jerarquía revisar las decisiones de un tribunal inferior. En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por

un foro inferior. Medina Nazario v. McNeill Healthcare LLC, 194 DPR 723, 728-729 (2016); García v. Padró, 165 DPR 324, 334 (2005). Contrario al recurso de apelación, la expedición o no del auto de *certiorari* solicitado descansa en la sana discreción del foro apelativo. Medina Nazario v. McNeill Healthcare LLC, *supra*, pág. 729; García v. Padró, *supra*, pág. 334.

Este Tribunal ha expresado que, en el ámbito judicial, la discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. Mun. Caguas v. JRO Construction, 201 DPR 703, 712 (2019); IG Builders *et al*. v. BBVAPR, 185 DPR 307, 338 (2012).

Según lo dispuesto en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, al atender un recurso de *certiorari* con el fin de revisar alguna orden o resolución interlocutoria emitida por el foro de instancia, el Tribunal de Apelaciones solamente podrá expedir el auto cuando se recurra de una orden o resolución al amparo de las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57,[28] o de la denegatoria de una moción de carácter dispositivo. Sin embargo, por excepción, el foro apelativo intermedio podrá revisar -en lo pertinente- una orden o resolución

---

[28] La Regla 56 de Procedimiento Civil, 32 LPRA Ap. V, R. 56, atiende lo relacionado con los remedios provisionales, mientras que la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, trata lo concerniente a los *injunctions*.

interlocutoria dictada por el tribunal de instancia cuando se recurra de la determinación en un caso de relaciones de familia, entre otros. Íd.

Como vemos, esta regla procesal "reconoce que ciertas determinaciones interlocutorias pueden afectar sustancialmente el resultado del pleito o tener efectos limitativos para la defensa o reclamación de una parte o conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata". Hernández Colón, *op. cit.*, Sec. 5515a, pág. 533.

Así pues, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. Mun. de Caguas v. JRO Construction, *supra*, pág. 712; IG Builders *et al*. v. BBVAPR, *supra*, pág. 338. En el caso de un recurso de *certiorari* ante el foro apelativo intermedio, la discreción está delimitada por la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, la cual establece los criterios que ese foro debe tomar en cuenta al ejercer su facultad discrecional. Rivera Figueroa v. Joe's European Shop, 183 DPR 580, 596 (2011). Los criterios esbozados en la mencionada regla son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

Al momento en que el tribunal apelativo intermedio decide no expedir el auto solicitado, "no asume jurisdicción sobre el asunto y su denegación nada dispone acerca de los méritos de lo planteado". <u>Negrón v. Srio. de Justicia</u>, 154 DPR 79, 93 (2001). Es por esto que cuando ese foro determina, en su facultad discrecional, no entender en los méritos de los asuntos que se le presentan, debe ser sumamente cuidadoso y consciente de la naturaleza de las controversias que tiene ante su consideración. <u>Mun. de Caguas v. JRO Construction</u>, *supra*, pág. 713.

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra*. G. Coll Martí y N. Jiménez Velázquez, *Práctica Apelativa*, en *Perspectivas en la práctica apelativa: 25 años del Tribunal de Apelaciones de*

*Puerto Rico*, San Juan, Eds. SITUM, 2018, pág. 19.   En resumen, "[l]a Regla 52.1 de Procedimiento Civil es excluyente, ya que enumera en forma taxativa aquellas instancias en las cuales [e]l Tribunal de Apelaciones no acogerá una petición de *[c]ertiorari* mientras que la Regla 40 es directiva: guía la discreción del Tribunal de Apelaciones en aquellos asuntos en que sí se permite entender, pero en los que los jueces ejercerán su discreción".   Íd., pág. 20.

Veamos, pues, de forma puntual los planteamientos señalados por ambas partes en sus respectivos escritos.

### III

Por un lado, el señor Torres González plantea que el Tribunal de Apelaciones erró al "confirmar" la *Orden* del foro de instancia dirigida a un descubrimiento de prueba en el que se le ordenó contestar múltiples preguntas del interrogatorio cursado por la recurrida, so pena de sanciones impuestas de $50 diarios.   Esto, a pesar de que el peticionario las había objetado oportunamente por entender que eran de carácter liquidatorio y patrimonial y, por consiguiente, que no procedían en un caso sencillo y urgente de divorcio por ruptura irreparable entre cónyuges con capitulaciones matrimoniales -con régimen de separación de bienes- y sin hijos en común.   Manifiesta que su petición de divorcio está "secuestrada por un descubrimiento de prueba atropellante" que ha interpuesto convenientemente la recurrida y que el tribunal de instancia erróneamente ha

permitido,[29] "so color de unas muy genéricas medidas cautelares solicitadas".[30] Además, enfatiza que todo esto ha provocado una dilación injustificada y desmedida de la disolución de su vínculo conyugal con la recurrida.

Por su parte, la señora Zaragoza Meléndez expone que el propósito del interrogatorio enviado al peticionario "es poner al Tribunal en condiciones de emitir aquellas medidas cautelares necesarias para proteger la participación de cada parte en igualdad de condiciones".[31] Al respecto, indica que aunque las partes se casaron en el 1998 bajo el régimen de sociedad legal de gananciales y se divorciaron en el 2000, no se separaron y siguieron viviendo juntos hasta su segundo matrimonio en el 2001, esta vez bajo el régimen de separación de bienes. No obstante, expresa que adquirieron bienes y deudas en común en el transcurso de su relación, a pesar de lo pactado en las capitulaciones matrimoniales. En consecuencia, plantea que no existe abuso de discreción, prejuicio o parcialidad en la decisión del tribunal de instancia, por lo que el foro apelativo intermedio actuó de forma correcta al denegar la expedición del recurso.

De esta forma, como mencionamos previamente, la controversia que nos ocupa se ciñe a determinar si procede un descubrimiento de prueba con carácter liquidatorio y

---

[29] *Solicitud urgente de paralización de los procedimientos ante el TPI en auxilio de jurisdicción*, pág. 1.

[30] *Solicitud de certiorari*, pág. 3.

[31] *Alegato en oposición a expedición de recurso de certiorari*, pág. 5.

patrimonial en un caso de divorcio por ruptura irreparable de un matrimonio que otorgó capitulaciones -con régimen económico de separación de bienes- y no tiene hijos en común.

A la luz del derecho aplicable y luego de ponderar los argumentos de ambas partes, procedemos a resolver la controversia planteada.

**IV**

Por los fundamentos que esbozaremos a continuación, nos limitaremos a atender el primer error planteado por el señor Torres González, ya que éste dispone del recurso. Así pues, examinados los planteamientos esbozados por ambas partes y el expediente ante nuestra consideración, resolvemos a favor del peticionario. Veamos.

Como asunto de umbral, conviene señalar varios puntos importantes sobre la trayectoria del caso. *Primero*, este pasado 18 de marzo de 2023 la petición de divorcio del señor Torres González cumplió un (1) año desde que se presentó ante el foro de instancia. *Segundo*, en varias ocasiones se han señalado vistas como parte del trámite del caso y éstas no se han podido celebrar debido a conflictos de calendario por parte de la representante legal de la señora Zaragoza Meléndez. *Tercero*, la vista de medidas cautelares, pautada para el 14 de octubre de 2022, se dejó sin efecto debido a que no se tenía un turno posterior según solicitado por la recurrida. Acto seguido, sin haber celebrado la vista de medidas cautelares, el tribunal de instancia emitió la *Orden* recurrida el 6 de octubre de 2022, en la cual se concedió

un término corto de cinco (5) días para que el peticionario completara el descubrimiento de prueba.[32]  Así, en aquella ocasión la vista de medidas cautelares quedó relegada, supeditada y suplantada por la mencionada *Orden*.

Aun cuando en nuestro ordenamiento jurídico se reconoce un descubrimiento de prueba amplio y liberal, la realidad es que bajo las circunstancias particulares de este caso,[33] el descubrimiento de prueba debió limitarse a descubrir aquello pertinente para disponer sobre la procedencia de las medidas provisionales solicitadas, si alguna.  Entonces, de esa manera, el foro de instancia pudiera proceder -sin mayor dilación- con la vista de divorcio en sus méritos.  Es por esto que bajo ningún concepto procede el descubrimiento de prueba con carácter liquidatorio y patrimonial que pretende la recurrida a través del interrogatorio de cien (100) preguntas dirigido al peticionario, y que el tribunal de instancia validó al ordenar que se contestara en el término

---

[32]  Es importante señalar que en su *Solicitud urgente de paralización de los procedimientos ante el TPI en auxilio de jurisdicción*, el señor Torres González incluyó como anejo una *Orden* emitida por el TPI el 11 de enero de 2023 y notificada el 12 de enero de 2023, en respuesta a la *Solicitud de reconsideración y para que se establezca calendario de descubrimiento de prueba*.  Esta *Orden* expresa lo siguiente: "Sin lugar. No le asiste la razón por lo que reiteramos lo ordenado.  En la medida en que no se cumpla con el descubrimiento de lo requerido, se continuarán acumulando las sanciones impuestas de $50.00 diarios según establecido. Para evitar mayores sanciones, deberá cumplir inmediatamente con el descubrimiento de lo requerido".  *Orden*, Apéndice de la *Solicitud urgente de paralización de los procedimientos ante el TPI en auxilio de jurisdicción*, Anejo 2.

[33]  Entiéndase, que se presentó una petición de divorcio por ruptura irreparable de los nexos de convivencia matrimonial; las partes otorgaron capitulaciones matrimoniales previo a su enlace conyugal y acordaron el régimen de separación de bienes; no procrearon hijos en común y, sobre todo, que ambos coinciden en que los nexos de convivencia matrimonial se han roto irreparablemente y no existe posibilidad de una reconciliación.

de cinco (5) días -según la *Orden* recurrida del 6 de octubre de 2022- y así reiterarlo en sus órdenes del 7 de diciembre de 2022 y el 11 de enero de 2023. Al así actuar, concluimos que el foro de instancia abusó de su discreción.

Claramente, ese tipo de interrogatorio resulta excesivo y oneroso en un proceso de divorcio por ruptura irreparable como el de este caso. De hecho, es incompatible con la finalidad del proceso mismo e incide con el postulado de nuestro ordenamiento procesal civil que busca garantizar una solución justa, rápida y económica de todo procedimiento.[34]

En la etapa en que se encuentra el caso, no procede el descubrimiento de prueba de carácter liquidatorio y patrimonial solicitado por la señora Zaragoza Meléndez. Conforme a nuestra jurisprudencia, ese tipo de descubrimiento sí pudiera proceder en una <u>acción civil separada e independiente</u> para atender los asuntos relativos al régimen económico habido entre las partes y allí se atenderán las alegaciones esbozadas por la recurrida en cuanto a la adquisición de bienes y deudas en común. Esto es, ello se ventilará en un <u>litigio post-divorcio</u>.

De ninguna forma nuestro sistema judicial puede permitir que una parte -con sus acciones u omisiones- mantenga en vilo un proceso judicial, en este caso un procedimiento de divorcio por ruptura irreparable. Por el contrario, el tribunal viene llamado a atender el asunto de forma

---

[34] Regla 1 de Procedimiento Civil de 2009, *supra*.

eficiente y con prontitud. Ante ello, es fundamental respetar la naturaleza del proceso del que se trata y, como mencionamos, asegurar la solución justa, rápida y económica de todo procedimiento.

Como ya indicamos, después de la sentencia de divorcio, el tribunal podría retener jurisdicción sobre las medidas provisionales tomadas, si alguna, hasta que se adjudiquen finalmente todas las controversias sobre la liquidación del régimen económico del matrimonio de conformidad con el Art. 459 del Código Civil de 2020, *supra*. En cuanto a las medidas provisionales, conviene apuntalar que el Art. 444 del Código Civil de 2020, *supra*, dispone que las partes pueden acordar sobre éstas y el tribunal de instancia las podrá adoptar o modificar en cualquier etapa del proceso. **En caso de que, dentro de un plazo prudente, las partes no logren llegar a unos acuerdos sobre las medidas provisionales, entonces el foro de instancia tiene un instrumento muy útil: el Art. 445 del Código Civil de 2020,** *supra*, **el cual le permitirá establecer <u>sumariamente</u> las medidas más urgentes y necesarias.**

Por todo lo anterior, al aplicar la normativa expuesta al presente caso, concluimos que erró el Tribunal de Apelaciones al negarse a expedir el recurso de *certiorari* que le fuera presentado, al igual que erró y abusó de su discreción el foro de instancia al ordenar -so pena de sanciones- que se contestaran múltiples preguntas de un interrogatorio con carácter liquidatorio y patrimonial como

parte del descubrimiento de prueba cursado por la recurrida y validado por el tribunal de instancia. Así pues, en casos como el presente, nos reafirmamos a favor de un procedimiento de divorcio encaminado a una resolución justa, rápida y eficiente en nuestro sistema judicial, máxime cuando las partes evidentemente no interesan continuar su vínculo matrimonial. Así y sólo así validaremos la expresión de que "las cortes deben ser instrumento de ayuda y no arena de combate".[35]

En conformidad con lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, así como en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, procedía, pues, la expedición del auto de *certiorari* solicitado por el peticionario al foro apelativo intermedio. Por consiguiente, se cometió el error señalado y aquí discutido.[36]

V

Por los fundamentos antes expuestos, revocamos la *Resolución* emitida por el Tribunal de Apelaciones el 28 de noviembre de 2022, así como la *Orden* dictada por el Tribunal de Primera Instancia el 6 de octubre de 2022. En consecuencia, devolvemos el caso al foro de instancia y ordenamos la celebración **inmediata** de una vista para que se determine -con la prueba descubierta y disponible hasta el

---

[35]  Véase nota al calce 1.

[36]  Recuérdese que el señor Torres González incluyó dos (2) señalamientos de error en su *Solicitud de certiorari*, mas sólo atendimos el primer error planteado debido a que éste dispone del recurso.

momento- si procede alguna de las medidas provisionales solicitadas por la recurrida y celebre en esa misma fecha la vista de divorcio correspondiente.[37]

Se dictará Sentencia en conformidad.


ROBERTO FELIBERTI CINTRÓN
Juez Asociado

---

[37] Es importante mencionar sobre aquellas medidas provisionales que así procedan, que el foro de instancia podrá hacerlas formar parte de la sentencia de divorcio que emita, de existir las circunstancias para ello.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| José Antonio Torres González<br><br>Peticionario<br><br>v.<br><br>Arlean Zaragoza Meléndez<br><br>Recurrida | CC-2023-56 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de abril de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, expedimos el recurso de *certiorari* solicitado sin trámite ulterior en conformidad con la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, y revocamos la Resolución emitida por el Tribunal de Apelaciones el 28 de noviembre de 2022, así como la Orden dictada por el Tribunal de Primera Instancia el 6 de octubre de 2022. En consecuencia, devolvemos el caso al foro de instancia y ordenamos la celebración inmediata de una vista para que se determine -con la prueba descubierta y disponible hasta el momento- si procede alguna de las medidas provisionales solicitadas por la Sra. Arlean Zaragoza Meléndez y celebre en esa misma fecha la vista de divorcio correspondiente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo